UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| I.A.M. NATIONAL PENSION FUND, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> KM ENTERTAINMENT CONSULTANTS, <br><br> *Defendant*. | Civil Action No. 25 - 146 (SLS) <br><br> Judge Sparkle L. Sooknanan |

## MEMORANDUM OPINION

In this lawsuit, I.A.M. National Pension Fund and its Executive Director Yolanda Montgomery seek to recover unpaid contributions under the Employment Retirement Income Security Act of 1974. They move for default judgment against KM Entertainment Consultants (KMEC), seeking a monetary award of $215,454.77 and injunctive relief directing KMEC to submit to an audit of its payroll and wage records. For the reasons explained below, the Court grants I.A.M.'s motion.

### BACKGROUND

**A.    Factual Background**

The Court draws the facts, accepted as true, from the Plaintiffs' "pleadings, motion for default judgment, and various attachments." *Omni Bridgeway Ltd. v. Ministry of Infrastructure & Energy of the Republic of Albania*, 23-cv-1938, 2025 WL 506570, at *1 (D.D.C. Feb. 14, 2025).

I.A.M. is a multiemployer pension benefit plan organized under the Employee Retirement Income Security Act (ERISA). Compl. ¶¶ 6–7, ECF No. 1. Ms. Montgomery is the Fund's Executive Director and its fiduciary. Compl. ¶ 8. Employers who sign collective bargaining

agreements (CBAs) with the International Association of Machinists and Aerospace Workers (the Union) are bound to the Fund's Trust Agreement and must make pension contributions to the Fund for all eligible employees. *See* Compl. ¶¶ 13–15. KMEC is such an employer. Compl. ¶ 12.

Under its CBA with the Union, KMEC must make contributions to the Fund "no later than 'the twentieth (20th) day of the month following the month for which the Contributions are being paid.'" Compl. ¶ 16. If KMEC fails to make required contributions, it may be held "liable for liquidated damages of 20% of the amount due" and must pay "simple interest . . . on all amounts due at the rate of 18% per annum from the date of the delinquency until the due date payment is received." Compl. ¶ 15.

In addition to contributions, KMEC must submit monthly "remittance reports." Compl. ¶ 25. These reports enable the Fund to record the hours worked by each plan participant so that their benefit accrual and vesting can be properly calculated. Compl. ¶ 27. The reports also allow the Fund to verify that KMEC has paid any contributions that it owes. Compl. ¶ 23. If KMEC fails to submit timely remittance reports, its contributions for a month "shall be deemed to be unpaid" and the Fund may "take steps to conduct a payroll audit." Compl. ¶¶ 28–29.

The Plaintiffs allege that KMEC has failed to make monthly contributions to the Fund or submit remittance reports since April 2022. Compl. ¶¶ 18, 26. At the time it filed the instant motion, I.A.M. estimated that KMEC owed $140,308.96 in unpaid contributions. Young Decl. ¶ 8, ECF No. 7-1.

**B.    Procedural Background**

I.A.M. filed this lawsuit on January 17, 2025. ECF No. 1. The docket reflects that I.A.M. properly served KMEC on May 2, 2025. ECF No. 3. On June 11, 2025, I.A.M. moved for entry of default, ECF No. 4, and on June 13, 2025, the Clerk of the Court entered default, ECF No. 6.

I.A.M. filed a motion for default judgment on July 28, 2025. Mot. for Default J., ECF No. 7. KMEC has not responded to the motion or otherwise appeared in this lawsuit in any way.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 provides that courts may enter default judgments to "safeguard plaintiffs when the adversary process has been halted because of an essentially unresponsive party." *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (cleaned up). "The determination of whether default judgment is appropriate is committed to the discretion of the trial court." *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008) (citing *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980)).

A default judgment is appropriate when a defendant may be considered "totally unresponsive," and "its default plainly willful" as reflected by a "failure to respond to the summons and complaint, the entry of a default, and the motion for a default judgment." *Bricklayers & Trowel Trades Int'l Pension Fund v. Civitillo Masonry, Inc.,* No. 23-cv-2598, 2025 WL 358757, at *2 (D.D.C. Jan. 31, 2025) (cleaned up). While a defaulting defendant is "deemed to admit every well-pleaded allegation in the complaint," the court must confirm the allegations are well-pled and must make an "independent determination of the sum to be awarded unless the amount of damages is certain." *Id.* (cleaned up).

## DISCUSSION

The Court concludes that I.A.M.'s Complaint alleges sufficient facts to establish KMEC's liability and that I.A.M. is entitled to monetary and injunctive relief. Accordingly, for the reasons explained below, the Court grants I.A.M.'s motion for default judgment.

### A.     Jurisdiction

Even when a defendant has not answered the plaintiff's complaint, a court still has an "'affirmative obligation' to ensure that it has subject matter jurisdiction over the suit."

*Redes Andinas de Comunicaciones S.R.L. v. Republic of Peru*, No. 22-cv-3631, 2024 WL 4286107, at *2 (D.D.C. Sept. 24, 2024) (quoting *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996)).

A court must also "satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant." *Mwani*, 417 F.3d at 6. In the case of a default judgment, the plaintiff need only raise a prima facie case of personal jurisdiction. *See id.* at 7. To assess personal jurisdiction over a non-resident defendant, courts in this District conduct "a two-part inquiry" that asks (1) whether jurisdiction is proper under the District of Columbia's long-arm statute and (2) whether the exercise of personal jurisdiction comports with the constitutional requirements of due process. *Buholtz v. Sogamoso*, No. 17-cv-1766, 2019 WL 13225374, at *1 (D.D.C. Jan. 10, 2019). Section 13-423(a)(1) of D.C.'s long-arm statute allows courts to exercise personal jurisdiction over out of state individuals based on their "transacting any business in the District of Columbia," and the D.C. Circuit has said that this requirement is "coextensive with the Constitution's due process limit." *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1377 (D.C. Cir. 1988) (quoting D.C. Code § 13-423(a)(1)). This means the Court may exercise specific jurisdiction if "there is a sufficient relationship between the gravamen of the complaint . . . and the District of Columbia, such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *McLaughlin v. Hartford Life & Annuity Ins. Co.*, 299 F. Supp. 3d 115, 118 (D.D.C. 2017) (cleaned up). ERISA further provides that actions like this one may be brought in the district "where the plan is administered . . . and process may be served in any other district where a defendant resides or may be found." 28 U.S.C. § 1132(e)(2).

Here, the Court is satisfied that it has subject matter jurisdiction based on ERISA's express grant of exclusive jurisdiction to United States district courts for claims like the one at issue. *See*

4

29 U.S.C. § 1132(e)(1). The Court is also satisfied that I.A.M. has stated a prima facie case for personal jurisdiction. Its allegations support that KMEC's business relationship with the D.C.-based Fund makes it amenable to suit here without offending traditional notions of fair play and substantial justice.

### B. Liability

A plaintiff seeking default judgment must: (1) request that the Clerk of the Court enter default based on the defendant's failure to respond and (2) file a motion for default judgment. *See Omni Bridgeway Ltd.*, 2025 WL 506570, at *3; *see also* Fed. R. Civ. P. 55. I.A.M. has completed both of these threshold steps. By failing to respond to I.A.M.'s lawsuit or the motion for default judgment, KMEC has "failed to contest its liability." *Bricklayers,* 2025 WL 358757, at *2. All that remains to establish liability is for the Court to determine that I.A.M.'s allegations are "well-pled." *Id.* at *2. The Court concludes that they are.

ERISA requires that employers who agree to contribute to a multiemployer pension plan under a CBA must "make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Here, I.A.M. has adequately alleged that: (1) it is a multiemployer pension plan; (2) KMEC entered a CBA with the Union that obligated it to contribute to the Fund in accordance with certain terms; and (3) KMEC has failed to abide by those terms. Compl. ¶¶ 33–35; *see Operating Eng'rs Health & Welfare Tr. Fund for N. California v. Makoni Constr. Inc.*, No. 24-cv-07857, 2025 WL 1747220, at *4 (N.D. Cal. May 20, 2025) (laying out elements of ERISA claim under Section 1145), *report and recommendation adopted*, No. 24-cv-07857, 2025 WL 1746278 (N.D. Cal. June 24, 2025). Specifically, I.A.M. alleges that KMEC has failed to make required monthly contributions or provide associated remittance reports since April 2022. Compl. ¶¶ 18, 26. With these well-pled allegations deemed admitted, *Bricklayers*,

2025 WL 358757, at *2, I.A.M. has established that KMEC is liable and that entry of default judgment is warranted.

### C. Relief

ERISA provides that when an employer fails to contribute to a fund in accordance with the terms of a CBA, the fund's fiduciary may obtain a "mandatory award for the plan consisting of (1) the unpaid contributions; (2) interest on the unpaid contributions; (3) an amount equal to the greater of interest on the unpaid contributions, or liquidated damages provided for under the plan in an amount not in excess of twenty percent; (4) reasonable attorney[] fees and costs . . . ; and (5) such other legal or equitable relief as the court deems appropriate." *Bricklayers*, 2025 WL 358757, at *2 (citing 29 U.S.C. § 1132(g)(2)). Here, I.A.M. has shown that it is entitled to a monetary award of $214,514.77 and injunctive relief requiring KMEC to submit outstanding remittance reports and comply with an audit of its payroll records.

#### 1. Monetary Relief

I.A.M. seeks $140,308.96 in unpaid contributions, $42,964.22 in interest, and $28,061.79 in liquidated damages. Mot. at 2–4. These categories of damages "are considered 'sums certain,' because their calculations are mandated by ERISA and party agreements, and are therefore appropriate for default judgment." *Id.* at *3 (cleaned up). I.A.M. must prove these damages with "reasonable certainty." *Id.* Given, however, that KMEC has failed to provide the "periodic [remittance] reports" required by the CBA, I.A.M. may carry this burden by providing a reasonable "estimation of delinquent contributions" that is "as accurate as possible under the circumstances." *Flynn v. Extreme Granite, Inc.*, 671 F. Supp. 2d 157, 162 (D.D.C. 2009).

### a. Unpaid Contributions

I.A.M. estimates that KMEC has failed to pay $140,308.96 in contributions since April 2022. Mot. 4. Because it has not received remittance reports from KMEC, I.A.M. generated this estimate "using the hours reported" in the last remittance report before April 2022 to estimate hourly totals and contributions for each month since then. Young Decl. ¶ 5. The Court is satisfied that I.A.M.'s estimation method is reasonable and that it has established KMEC's unpaid contributions with "reasonable certainty." *Bricklayers*, 2025 WL 358757, at *3.

### b. Interest

The CBA provides that KMEC must pay interest "at the rate of 18% per annum" for any unpaid contributions from the date the payments are delinquent "until the due date the payment is received." Compl. ¶ 15. I.A.M. has reasonably calculated the interest owed on KMEC's unpaid contributions as $42,964.22. Young Decl. ¶ 8, Ex. 1, ECF No. 7-1; Mot. at 3–4. The Court is satisfied that I.A.M. may collect this amount. *See* 29 U.S.C. § 1132(g)(2)(B).

### c. Liquidated Damages

Under the CBA and ERISA, I.A.M. is also entitled to liquidated damages, calculated at a rate of 20% of the delinquent contributions. Compl. ¶ 15; 29 U.S.C. § 1132(g)(2)(C)(ii). I.A.M.'s declarations demonstrate that it is entitled to $28,061.79 in liquidated damages, which is 20% of the amount KMEC owes in unpaid contributions since April 2022. Young Decl. ¶ 8, Ex. 1.

### d. Attorney Fees and Costs

I.A.M. is also entitled to reasonable attorney fees and costs. 29 U.S.C. § 1132. "[U]nlike unpaid contributions, interest, and liquidated damages, attorney[] fees do not qualify as 'sums certain'—rather, the court must ascertain whether the requested fees are reasonable." *Bricklayers*, 2025 WL 358757, at *4 (cleaned up).

Here, I.A.M. has provided documentation reflecting 4.6 hours of work by its attorney, billed at a rate of $538 per hour.[1] Hemenway Decl., Ex. 1, ECF No. 7-2. The Court finds that 4.6 hours is a reasonable amount of time expended "for the work performed in this litigation." *Bricklayers*, 2025 WL 358757, at *4 (finding 9 hours reasonable in a similar ERISA default judgment action). I.A.M.'s billing records "do not reveal excessive staffing or unnecessary duplication and reflect the exercise of counsel's billing judgment." *Id.*

I.A.M.'s requested billing rate is pegged to the Fitzpatrick Matrix, *see* Hemenway Decl., Ex. 2, which is generally considered an appropriate measure of the prevailing market rates for complex federal litigation in the District of Columbia, *see Rawlings v. District of Columbia,* No. 24-cv-2122, 2025 WL 1432278, at *6 n.1 (D.D.C. May 19, 2025) (citing *J.T. v. District of Columbia*, 652 F. Supp. 3d 11, 32 (D.D.C. 2023)); *see also Alavi v. Bennett*, No. 15-cv-2146, 2024 WL 5056204, at *13 (D.D.C. Dec. 10, 2024) (collecting cases). While this litigation is of arguable complexity—especially given KMEC's default—the Court is satisfied that the rate dictated by the Fitzpatrick Matrix and requested by I.A.M. is reasonable in this case.

I.A.M. also seeks reimbursement of $705 in litigation costs expended in filing this suit and serving KMEC. Mot. at 6; Hemenway Decl. ¶¶ 7–8. The Court finds that these are "necessary and reasonable expenses for litigation" and I.A.M. is entitled to be reimbursed for them. *Bricklayers*, 2025 WL 358757, at *4.

In total, the Court concludes that I.A.M. is entitled to $3,179.80 in attorney fees and costs.

---

[1] I.A.M.'s Motion for Default Judgment requested $3,414.80 in attorney fees. *See* Mot. at 6–7; Hemenway Decl. ¶ 9, ECF No. 7-2. I.A.M. has since explained that its Motion mistakenly included $940 in fees for four hours of paralegal work that "were written off," and that it is actually only requesting $2,474.80 in attorney fees. Notice Att'ys' Fees Requested, ECF No. 10.

### 2. Injunctive Relief

In addition to monetary relief, I.A.M. asks the Court to order KMEC to submit outstanding remittance reports since April 2022 and to comply with an audit of its payroll records for the same period. Mot. at 7. Without these reports, I.A.M. asserts, it cannot "verify that all contributions are being made in full and calculate each participant's vesting and benefit accrual." Mot. at 4–5; *see also* Compl. ¶¶ 22–25.

As noted previously, ERISA authorizes courts to grant "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E). And courts in this District have routinely granted relief of the sort I.A.M. requests under similar circumstances. *See, e.g.*, *Flynn*, 671 F. Supp. 2d at 162–63 (D.D.C. 2009) (granting plaintiff's request for "access to the defendant's records for purposes of conducting an audit" where defendant in ERISA matter had "failed to provide periodic reports"); *Bricklayers*, 2025 WL 358757, at *4 (ordering defaulting ERISA defendant to submit outstanding remittance reports and collecting cases granting similar equitable relief). Here, such relief is appropriate given that KMEC has "demonstrated no willingness to comply with either its contractual or statutory obligations or to participate in the judicial process." *Boland v. Yoccabel Const. Co.*, 293 F.R.D. 13, 20 (D.D.C. 2013).

## CONCLUSION

For all the above reasons, the Court grants the Plaintiffs' Motion for Default Judgment, ECF No. 7. The Defendant shall pay the Plaintiffs $214,514.77—encompassing unpaid contributions, interest, liquidated damages, and attorney fees and costs—and shall submit to an audit of its payroll and wage records from April 1, 2022, through the date of compliance.

A separate order will issue.

_____
SPARKLE L. SOOKNANAN
United States District Judge

Date:   November 14, 2025